J. D. JONES,
vs.
ELIJAH BADLEY
AND
JOHN T. DARBY,

} CAVEATS IN THE LAND OFFICE, SEPTEMBER, 1850.

[LAND OFFICE—ESCHEAT PATENTS.]

AN escheat grant will pass all the land comprehended within the true location of the tract escheated ; it relates back, by operation of law, to the original grant, and is within the rule of law, of relation between grants and certificates.

But this doctrine of relation is founded upon a principle of equity, and where an escheator *expressly* excepts from his survey a part of the tract escheated and does not pay for it, the doctrine does not apply.

As a general rule, lands which have escheated cannot be taken up under a common warrant as vacant lands.

But where no fraud or imposition has been practiced upon the State, and there were no improvements upon the land which the party had taken up under a common warrant, honestly supposing it was vacant, paid the purchase money therefor and erected improvements thereon, the grant will not be refused though the land be escheat.

The Chancellor, sitting as judge of the land office, may decree according to equity and good conscience, and agreeably to the principles established in the High Court of Chancery, as if the matter were brought before him by a bill in chancery.

It is a general rule of the land office to issue the patent when the right is doubtful, in order that the party may not be deprived of the privilege of taking the judgment of a court of law upon its efficacy.

[The following opinion of the Chancellor was delivered by him as Judge of the Land Office upon caveats filed to two certificates therein referred to. The facts of the case are fully stated in the opinion.]

THE CHANCELLOR:

These cases have been submitted and argued together, and with one exception depend upon the same facts.

The land originally constituted part of a tract, called "Gladstone's Choice," granted to Peter Ellis in the year 1687. By him it was conveyed to Richard Ashton, who died seized thereof, intestate and without heirs, so that it became escheat, and was granted as such to Joseph Collins in 1763 as "Bachelor's Folly."

In the resurvey upon the escheat warrant, eighteen acres and one-half acre were excluded because covered by the waters of Nanticoke river, and in this state of things in the years 1831 and 1835, the land so escheated was taken up under common warrants, the first by Elijah Badley, whose certificate contains one acre, and the other by John T. Darby, whose certificate contains eleven and three-fourths acres.

These certificates have been returned, the composition paid, and caveats being filed by a party interested in the escheat grant, the question is whether, according to the rules and practice of the land office and the equities of the matter, patents should be issued upon these certificates?

It is insisted upon the part of the caveator, and the principle is not to be and has not been disputed, that the escheat grant will pass all the land comprehended within the true location of the tract of land escheated. The earlier cases upon this subject have been recently sanctioned by the Court of Appeals in the case of *Casey's lessee* vs. *Inloes*, 1 *Gill*, 507, and there can, therefore, be no doubt that an escheat grant does, by operation of law, relate back to the original grant, and is within the rule of law of relation between grants and certificates. But this doctrine of relation is founded upon a principle of equity, and, therefore, when it clearly appears that the escheat grant was not intended to include all the land comprehended within the lines of the original tract, and that the party taking out the escheat warrant knew he was not including in his survey under it, all the land which had escheated, and did not pay for it all the foundation upon which the doctrine rests is removed, and it cannot consequently apply.

In the present case, therefore, as it appears to me, the principle of relation is inapplicable, because the resurvey under the escheat warrant, *in express terms*, excludes the land in question. The escheator, therefore, knew he was not getting it, and did not pay for it, and there can be no principle of equity which will give it to him.

But it is said that conceding the land did not pass to the grantee under the escheat patent, still it was not liable to be taken up under common warrants, and therefore the caveats must be ruled good.

The principle that lands which have escheated to the state cannot properly be taken up as vacant, seems to be quite clear, but so long as the State alone is interested, I do not very well see why she may not herself agree to waive the right which the reversion of the land to her by the failure of heirs on the part of the owner may have conferred upon her. If, to be sure, any fraud or imposition has been practiced upon the State, as in the case of *Lord Proprietary* vs. *Jenings et al*, 1 *H. & McH.*, 92, the party perpetrating the fraud or those claiming under him could not be permitted to reap the fruits of it, but if the transaction was fair and the result of mistake all round, it would not be difficult to conceive of cases in which the principles of justice would be violated in taking from a party, lands acquired under a common warrant which had escheated. One of the cases now before the court may be taken as an illustration. Upon the land covered by the certificate of *"Badley's Beginning,"* it is admitted that at the time of the survey thereof, and the return of the certificate, there were no improvements of any description, and that it is situated on the flats of Nanticoke river, between high and low water marks on said river. It had become escheat in 1762, and was expressly thrown out of the resurvey under the escheat warrant in 1763. That it was honestly supposed to be vacant land by Elijah Badley, when he made his survey in 1831, there is not the least reason to doubt, and, indeed, as there were no improvements upon it, and consequently none to pay for, there was no motive for not taking out

14*

an escheat warrant if he had known it had escheated.   The expense of acquiring the title would have been no more.

Since taking it up he has paid for it and erected improvements at some considerable costs.   Under these circumstances, the question is whether, in the language of the late Chancellor, it would be "according to right, to reason, and to good conscience," to deny him a grant.   The Chancellor, sitting as Judge of the Land Office, as remarked in the case from which the above expressions are taken, "may decree according to equity and good conscience, and agreeably to the principles established in the High Court of Chancery, as if the matter were brought before him by a bill in chancery." *Cunningham* vs. *Browning*, 1 *Bland*, 319, 320.   Now, upon a bill in equity, it could not, it seems to me, be successfully contended that the State, after selling her lands, as has been done in this case, receiving the purchase money, and after the innocent purchaser had erected improvements upon the property purchased, could reclaim them upon the ground that the mode in which the title was proposed to be acquired was not the appropriate one.   In this case, the State has neither been defrauded nor prejudiced, and if she withholds the grant, will be inflicting a serious injury upon the purchaser, because, in that event, it would be depriving him of the privilege of testing the validity of his title in a court of law.   For notwithstanding the patent may issue, its effect in passing the title may be questioned in a suit at law, and hence the general rule of the land office to issue the patent when the right is doubtful in order that the party may not be deprived of the privilege of taking the judgment of court of law upon its efficacy.

For these reasons I deem it right to overrule the *caveat* to the certificate for "*Badley's Beginning*," but shall rule it good with reference to the certificate for "*Spottsville*," in regard to which no agreement has been made, and consequently as to it the same equitable considerations do not exist.

JONES, for Caveator.
DONE, for Caveatees.